IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MCCLARIN PLASTICS, INC., <u>et al.</u>,** : | | |
|     **Plaintiffs** : | | |
| : | No. 1:16-cv-02508 | |
| **v.** : | | |
| : | (Judge Kane) | |
| **BLACKFORD CAPITAL, INC., <u>et al.</u>,** : | | |
|     **Defendants** : | | |

<u>**MEMORANDUM**</u>

Before the Court is Defendants Blackford Capital, Inc., and Martin W. Stein's motion to dismiss Plaintiffs McClarin Plastics, Inc., and Todd Kennedy's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6). (Doc. No. 3.) For the reasons provided herein, the Court will grant Defendants' motions to dismiss.

**I.   BACKGROUND**

This breach of contract action was initiated by Plaintiffs McClarin Plastics, Inc., and Todd Kennedy on or about October 26, 2016 through the filing of a praecipe to issue writ of summons in the Court of Common Pleas of York County. (Doc. No. 1.) Thereafter, on November 18, 2016, Plaintiffs filed a two-count complaint asserting claims of breach of contract (Count I) and unjust enrichment (Count II) against Defendants Blackford Capital, Inc., and Martin W. Stein. (<u>Id.</u>) On December 20, 2016, this action was removed to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1332 (a)(1). (Doc. No. 1.)

The allegations forming the basis of Plaintiffs' complaint are as follows. Plaintiff Todd R. Kennedy, a Pennsylvania resident ("Kennedy"), is President, Chief Executive Officer, and majority owner of McClarin Plastics Inc., a Pennsylvania business corporation with an office in

1

Hanover, Pennsylvania. ("Old McClarin").  (Doc. No. 1-2 at ¶¶ 1, 3.)  Defendant Marin T. Stein, a Michigan resident ("Stein"), is the "Founder and Managing Director" of Defendant Blackford Capital, Inc. ("Blackford"), a private equity investment firm with an office in Grand Rapids, Michigan.   (Id. at ¶¶ 4-7.)  Stein is the manager, and Blackford is the "sole member/manager," of Composite Consolidation Company, LLC ("CCC"), a Delaware limited liability company.  CCC is the sole owner of Southeast Composites, LLC, Amtech, LLC, and Pacific Composites, LLC (collectively the "CCC Entities").  Composite Consolidation Company-II, LLC ("CCC-II"), a Delaware limited liability company, is a wholly-owned subsidiary of CCC.  (Id. at ¶ 8.)

According to the complaint, Blackford and Stein were involved in negotiations on behalf of CCC in executing a Unit Purchase and Merger Agreement on June 19, 2014 ("Merger Agreement"), to combine the business of Old McClarin with the business of the CCC Entities.  (Id. at ¶ 12.)  The parties to the Merger Agreement consisted of Old McClarin, Plaintiff McClarin Plastics, LLC ("New McClarin"), CCC, CCC-II, the CCC Entities, Kennedy and Michael Clifford.  (Id.) The Merger Agreement memorialized a series of transactions to take place on the closing date of January 15, 2015.  (Id. at ¶¶ 13-19.) The preliminary transactions to be made on the closing date in anticipation of the merger included the following:  (1) Old McClarin would transfer all of its assets and liabilities to New McClarin in exchange for ownership of 99,990 units; (2) an entity affiliated with shareholder Michael Clifford ("Clifford") and Kennedy ("TKMC"), would purchase 10 units in New McClarin for the sum of $10.00; and (3) CCC would contribute its ownership interest in the CCC Entities to CCC-II.  (Id.)  Immediately following these transactions, CCC-II would purchase 49,000 units in New McClarin from Old McClarin, constituting 49% of the units in New McClarin, for a purchase price of $8,800,00.00.  (Id.)  This transaction would result in both Old McClarin and TKMC

collectively holding 25% of the units in New McClarin. (Id.) Next, CCC-II would merge the CCC Entities with and into New McClarin, and CCC-II's ownership interest in the CCC Entities would be converted into 104,000 units in New McClarin. (Id.) This, in effect, would result in CCC obtaining a 75% ownership interest in New McClarin through the unit purchase by CCC-II from Old McClarin and the merger of the CCC Entities with and into New McClarin. (Id.) Finally, Old McClarin and TKMC would contribute their 25% ownership interest in New McClarin to CCC-II in exchange for a 25% ownership interest in CCC-II. (Id.)

According to Plaintiffs, a day or so before closing on the transactions contemplated by the Merger Agreement, Stein, acting on behalf of Blackford, approached Kennedy about deferring $500,000.00 of the $8,800,00.00 negotiated acquisition price due to Blackford's purported lack of sufficient cash to fund the purchase of 49,000 units in New McClarin. (Id. at ¶ 20.) Plaintiffs aver that, "[i]n the spirit of cooperation with his new partners, and based on numerous assurances from Stein," Kennedy agreed on behalf of Old McClarin to defer a portion of the unit purchase price. (Id. at ¶ 21.) In an E-mail to Kennedy on January 13, 2015, Stein confirmed the agreement to deduct $500,00.00 from the purchase price and further noted that "[w]e will find some way to make this back up to you (real estate monitoring fees, transaction bonus, incentive bonus, etc.)." (Doc. No. 1-2 at 84.)

On January 14, 2015, Old McClarin, Kennedy, Clifford, CCC, and CCC-II entered into Letter Agreement[1] amending the Merger Agreement to reflect the adjusted purchase price. The Letter Agreement, prepared on Blackford letterhead, provided the following:

Gentlemen:

---

[1] While Plaintiffs allege that Blackford entered into the January 14, 2015 Letter Agreement (Doc. No. 1-2 at ¶ 22), the copy of the Letter Agreement attached to Plaintiffs' complaint and expressly incorporated by reference reveals that Blackford was not a party to the Letter Agreement.

3

> The lenders providing financing for the Transaction have deemed certain raw materials, inventory and accounts receivable of Old McClarin as "ineligible collateral" for the purpose of calculating the applicable borrowing base. As a result of the exclusion of such ineligible collateral from the borrowing base, less cash is available to fund the Unit Purchase Price. Thus, Old McClarin has agreed to accommodate the request . . . to reduce the Unit Purchase by $500,000[.00.] Further, the parties have agreed to reduce the purchase price to $8,300.000, in exchange for the financial accommodations referred to herein.[ ]
>
> In exchange for the foregoing purchase price adjustment, it is the intent of [New McClarin] and the CCC Entities to provide the owners of Old McClarin, during the five-year period following the Closing, with financial benefits, in a form agreed upon by the parties, in an amount commensurate with the amount of such purchase price reduction.

(Doc. No. 1-2 at 86.)

Shortly after closing, Plaintiffs discovered that "Blackford itself took $525,554.00 in fees in connection with the transaction." (Id. ¶ 26.) Moreover, Plaintiffs allege that, upon information and belief, Defendants sought a purchase price adjustment of $500,000.00 in order to satisfy a pre-existing obligation to pay the owner of another entity Defendants acquired by the date of closing in order to avoid a five million dollar penalty. According to Plaintiffs, "[i]t is believed and therefore averred that Blackford and Stein engage in a pattern, practice and habit of using proceeds in one transaction to meet obligations in unrelated transactions without disclosing the same to its investors." (Id. at ¶ 32.) Plaintiffs argue that they have attempted to reach an agreement on the terms of repayment with respect to the deferred purchase price for over a year. (Id. at ¶ 33.) As of May 18, 2016, Stein has offered in response to provide the capital necessary to fund the New McClarin capital contribution required of its members due to the financial challenges New McClarin has faced since closing in lieu of repaying the $500,000.00. (Id. at ¶ 37.) According to Plaintiffs, Defendants have failed to provide Plaintiffs with the promised financial benefit commensurate with the $500,000.00 deferred purchase price.

4

Plaintiffs' complaint is comprised of two counts. Count I advances a breach of contract claim against Defendants resulting from Defendants' failure to remit to Plaintiffs the unit purchase price shortfall of $500,000.00. Count II sets forth an alternative claim of unjust enrichment against Defendants, premised on Defendants' retention of a commission in the amount of $500,000.00. Defendants have moved for dismissal of the complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion has been fully briefed and is now ripe for disposition.

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck

v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004). [2]

**III. DISCUSSION**

Among the grounds for dismissal advanced by Defendants in support of their motion to dismiss Plaintiffs' complaint, Defendant argues that Plaintiffs' breach of contract claim (Count I) must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiffs have failed to allege the existence of an agreement between the above-captioned parties. (Doc. No. 8 at 9.) Similarly, Defendants argue for dismissal of Plaintiffs' unjust enrichment claim (Count II), under Federal Rule 12(b)(6) due to Plaintiffs' failure to allege any inequitable benefit conferred upon Defendants. (Id. at 10.)[3] The Court addresses these arguments in turn.

    A.    COUNT I- BREACH OF CONTRACT

Count I of the complaint asserts a breach of contract claim against Stein and Blackford.[4] Defendants urge the Court to dismiss this claim, as the Merger Agreement and the Letter

---

[2] In addition to the complaint in this matter (Doc. No. 1-2), the Court has taken judicial notice of exhibits Plaintiffs have appended to, and referenced within, his complaint, including the Merger Agreement, the January 13, 2015 E-mail confirmation, and the Letter Agreement. Consideration of these materials does not require conversion of the motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) into a motion for summary judgment under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(d).

[3] Defendants alternatively argue that, should the Court find that Plaintiffs have otherwise sufficiently stated claims for relief, dismissal of the complaint is nevertheless appropriate, as the claims contained therein are subject to a binding arbitration provision provided in Section 8.17 of the Merger Agreement. (Id. at 12.) With respect to the defense raised by Defendants of the Court's lack of personal jurisdiction, the Court finds that Plaintiffs have sufficiently met their burden of presenting a prima facie case for the exercise of personal jurisdiction through the submission of a declaration by Plaintiff Kennedy attesting to Defendants' contacts with Pennsylvania during the negotiation process. (Doc. No. 12-1 at 1.)

[4] Additionally, Defendants submit that the complaint is subject to dismissal pursuant to Federal Rule 12(b)(2) for failure to state facts giving rise to in personam jurisdiction over Defendants.

Agreement attached as exhibits to Plaintiffs' complaint plainly belie any argument that a contractual relationship exists between Plaintiffs and Defendants. Specifically, Defendants contend that the signature blocks of these attached agreements reveal that neither Defendant was a party to either agreement.

In Plaintiffs' brief in opposition to Defendants' motion to dismiss, Plaintiffs concede that "Blackford and Stein were not parties to the Merger Agreement itself," but nevertheless argue that the complaint contains sufficient factual allegations to support a plausible inference of an agreement between the above-captioned parties. (Doc. No. 12 at 5.) Specifically, Plaintiffs maintain that the "subject of this lawsuit is the Letter Agreement dated January 14, 2015, " and submit that the Letter Agreement, printed on Blackford's letterhead, which was personally negotiated and consummated by Stein via a Blackford E-mail address, demonstrates a contractual relationship with Stein and Blackford.

The Court agrees with Defendants. As a general principle of law, an action on a contract cannot be maintained against an individual who is not a party to the contract. See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 n.4 (3d Cir. 1976) ("Under Pennsylvania law, generally a person not a party to the contract cannot be liable for a breach."); Fleetway Leasing Co. v. Wright, 697 A.2d 1000, 1003 (Pa. Super. Ct. 1997) ("A person who is not a party to a contract cannot be held liable for breach by one of the parties to a contract"); In re Barilla, 535

---

(Id. at 13.) Here, Plaintiffs cast the Letter Agreement as an independent contractual arrangement, separate and apart from the Merger Agreement itself. For purposes of this motion to dismiss, the Court need not decide whether the Letter Agreement is part and parcel of the Merger Agreement, and thus is subject to the choice-of-law and arbitration provisions contained therein, as it finds that Plaintiffs have failed to state a claim for a breach of the Letter Agreement or unjust enrichment. Thus, the Court does not address this argument raised by Defendants in their motion to dismiss, nor does it engage in an analysis of what state's substantive law governs this breach-of-contract action, and instead applies Pennsylvania law, as the parties have invoked Pennsylvania case law in their substantive briefs.

A.2d 125, 128 (Pa. Super. Ct. 1987) ("It is a well[-]established principle of law that a contract cannot legally bind persons not party thereto.")  Here, as Defendants persuasively argue, the Letter Agreement itself reveals that "neither Blackford nor Stein assumed any obligation to Plaintiff," as it expressly provides that  "Old McClarin has agreed to accommodate the request from the CC[C] Entities to reduce the Unit Purchase by $500,000.00," in consideration of "New[ ] [McClarin] and the CCC Entities . . . provid[ing] the owners of Old McClarin, during the five-year period following the Closing, with financial benefits . . . ."  Furthermore, while Stein is a signatory to the Letter Agreement, it is apparent from the signature block that the Stein did not sign in his individual capacity or as an agent of Blackford.  Rather, Stein executed the Letter Agreement on behalf of CCC, CCC-II, and the CCC Entities in his capacity as a manager.

The fact that the Letter Agreement was printed on Blackford letterhead, alone, does not make Blackford and Stein contractually bound to the terms and conditions contained therein.  Viso v. Werner, 369 A.2d 1185, 1187 (Pa. 1977) (emphasizing that the company letterhead, use of the first person plural, and the signature indicated that the defendant was contracting on behalf of the corporation, and further noting that the fact the corporation was comprised of one shareholder was not reason alone to disregard its corporate form); Hayes v. Am. Int'l Grp., No. CIV.A. 09-2874, 2014 WL 3746813, at *26 (E.D. Pa. July 29, 2014) ("[A]n insurance company is not deemed to be a party to a contract simply because affiliated companies utilized its letterhead.") (citing Lockhart v. Fed. Ins. Co., No. 96–5330, 1998 WL 151019, at *3 (E.D. Pa. Mar. 30, 1998)).  Stated simply, Plaintiff has failed to assert facts or offer evidence plausibly supporting Defendants' assent to form a contractual relationship with Plaintiffs and incur individual liability.  Dodson Coal Co. v. Delano, 109 A. 676, 677 (Pa. 1920) (dismissing a plaintiff's contract claim for failure to offer factual allegations or evidence tending to establish

that the contract was entered into by the defendant individually). Accordingly, the Court finds dismissal of Plaintiffs' breach of contract claim to be appropriate, as the complaint and Letter Agreement, construed in the light most favorable to Plaintiffs, do not allow for a plausible inference to be drawn that Defendants were parties to the Letter Agreement.

>    B.     COUNT II- UNJUST ENRICHMENT

Count II of the complaint sets forth an alternative claim of unjust enrichment under Pennsylvania law against Blackford and Stein. Defendants argue for dismissal of Count II of the complaint on the basis that Plaintiffs did not directly confer any inequitable benefit upon them as required to state a claim for unjust enrichment.

To recover under the equitable doctrine of unjust enrichment, a plaintiff must plead facts establishing each of the following elements: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995). The sine qua non of unjust enrichment is that "the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001). Indeed, "[t]he mere fact that one party benefits from the act of another is on its own insufficient to justify restitution. There must also be an injustice in permitting the benefit to be retained without compensation." Inoff v. Craftex Mills, Inc., No. CIV. A. 06-3675, 2007 WL 4355385, at *13 (E.D. Pa. Dec. 11, 2007) (citation omitted). Stated differently, a plaintiff must demonstrate "that the party against whom recovery is sought either wrongfully secured or passively received a benefit that . . . would be unconscionable for her to retain." Sovereign Bank v. BJ's Wholesale

Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (quoting Torchia v. Torchia, 346 Pa.Super. 229, 499 A.2d 581, 582 (1985)). At all times, the "focus remains on the question of whether the defendant has been unjustly enriched." Com. ex rel. Pappert v. TAP Pharmaceutical Products, Inc., 885 A.2d 1127, 1137 (Pa. Cmwlth. 2005) (citations omitted).

Here, Plaintiffs allege that Defendants were conferred benefits in the form of fees that Blackford retained at closing in exchange for management services rendered to CCC and CCC-II in negotiating on their behalf in connection with the Merger Agreement, and the renegotiated reduced purchase price agreed to by Plaintiffs. Plaintiffs insist that, by agreeing to the deferred purchase price, the closing occurred on schedule, which enabled Blackford to meet its unrelated ancillary obligations. (Doc. No. 15 at 6.) By the Court's reading of the complaint, liability is predicated on allegations that Defendants inequitably benefitted from (1) Plaintiffs' Agreement with CCC and CCC-II to defer the purchase price, and (2) their retention of a commission for their management services rendered to CCC and CCC-II at closing.

It is evident from the complaint and appended exhibits that Plaintiffs fail to state a claim for unjust enrichment against Defendants. With respect to Plaintiffs' argument that Defendants were unjustly enriched by Plaintiffs' agreement with CCC and CCC-II to defer the purchase price, Plaintiffs have failed to allege what benefit Defendants "wrongfully secured or passively received," from having facilitated merger negotiations between Plaintiffs and the CCC companies. Rather, it appears that Plaintiffs premise liability on a theory that the benefit received was an obligation deferred. (See Doc. No. 1-2 ¶ 51) ("Defendants are unjustly enriched by their failure to pay [Plaintiffs' the value of ownership interests [Plaintiffs] transferred."). However, the exhibits attached to Plaintiffs' complaint reveal that Plaintiffs agreed to "accommodate the request from the CC[C] Entities to reduce the Unit Purchase by $500,000.00" in exchange for

11

New McClarin and the CCC Entities providing Plaintiffs with financial benefits commensurate with the amount of such purchase price reduction "during the five-year period following the Closing." (Doc. No. 1-2 at 86) (emphasis added).  Plaintiffs have not pointed to any "tangible benefit held by [Defendants] that rightfully belong to [them]."[5] Jarzyna v. Home Properties, L.P., No. CV 10-04191, 2013 WL 12155357, at *1 (E.D. Pa. Dec. 13, 2013) (citing Global Ground Support, LLC v. Glazer Enters., Inc., 581 F. Supp. 2d 669, 677 (E.D. Pa. 2012) (denying an unjust enrichment claim by a subcontractor due to the tenuous connection between any value created by the subcontractor and any benefit retained by the owner)).  Indeed, the complaint is devoid of factual allegations of any benefit appreciated, accepted, or retained by CCC and CCC-II by the deferred purchase price agreement that could be attributed to Defendants.  Neither the complaint's allegations concerning Plaintiffs' own loss as the measure of its recovery against Defendants, nor the appended exhibits memorializing an agreement with CCC and CCC-II to reduce the purchase price, are sufficient to support a reasonable inference that Defendants themselves were directly or indirectly enriched by this contractual arrangement between Plaintiffs and the CCC companies contemplating deferred compensation.  Meehan v. Cheltenham Twp., 189 A.2d 593, 595 (Pa. 1963); Nicole Medical Equip. & Supply, Inc. v. TriCenturion, Inc., No. CIV.A. 10-389, 2011 WL 1162052, at *7 n. 46 (E.D. Pa. Mar. 28, 2011) ("Plaintiff does not allege any facts reflecting the contours of an agreement between it and Defendants from which Defendants benefitted financially, nor a benefit Plaintiff conferred upon

---

[5] While Plaintiffs allege that deferring the purchase price enabled Blackford to satisfy its preexisting financial obligations arising out of an unrelated transaction, Plaintiffs fail to explain how the agreement between CCC and CCC-II and Plaintiffs to reduce the purchase price by $500,000.00 resulted in Defendants reaping the benefit of having obtained $500,000.00 to satisfy a preexisting debt.  The mere fact that Defendants are managers of these limited liability companies, alone, is insufficient to link any benefit obtained by the contracting limited liability company to its managing member.

Defendants under such circumstances that it would be inequitable for Defendants to retain the benefit without payment to Plaintiff.") (emphasis and citation omitted).

Moreover, notwithstanding the lack of factual allegations in the complaint of the circumstances under which Defendants benefitted from Plaintiffs' agreement with non-parties to this action, the complaint, as pled, runs afoul of the well-settled principle that liability does not attach simply because a defendant may have benefitted due to the actions of the plaintiff. Styer v. Hugo, 422 619 A.2d 347, 350 (Pa. Super. Ct.1993), aff'd, 637 A.2d 276 (Pa. 1994). As explained by the Supreme Court of Pennsylvania:

> The Restatement of Restitution sets forth various rules for the determination of whether the retention of a particular enrichment is unjust. Section 110 deals with the situation where a third party benefits from a contract entered into between two other parties. It provides that, in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party. The Restatement gives as an example of this principle the situation where A purchases a ring from C, a jeweler, for his fianc[é]e B and then defaults in the payments. The Restatement states that C cannot recover the ring or its value from B.

Id. The rationale behind this example provided by the Restatement and relied upon by the Pennsylvania Supreme Court is relevant here. Specifically, "where a third party benefits from a contract entered into between two other parties, the third party's retention of the benefit without paying any compensation to the aggrieved contracting party will not be unjust if the party enjoying the benefit did not mislead" the contracting party. Limbach Co., LLC v. City of Phila., 905 A.2d 567, 577 (Pa. Commw. Ct. 2006). Here, absent from the complaint are allegations that Defendants, in their negotiations on behalf of CCC and CCC-II, directly requested the benefit on their own behalf or misled Plaintiffs into amending the Merger Agreement with CCC and CCC-II to reduce the purchase price. Glob. Ground Support, LLC v. Glazer Enters., Inc., 581 F. Supp. 2d 669, 676 (E.D. Pa. 2008); Goldsmith Assocs., Inc. v. Del Frisco's Rest. Grp., LLC, No.

CIV.A. 09-1359, 2009 WL 3172752, at *4 (E.D. Pa. Oct. 1, 2009) ("[A]n unjust enrichment plaintiff in Pennsylvania must allege facts showing that it was misled or that the defendant directly requested the benefit."). Rather, Plaintiffs' unjust enrichment claim is grounded on an unavailing theory that Plaintiffs are entitled to shift their alleged loss resulting from the mere failure of performance by the contracting CCC companies to Defendants, third parties who may have indirectly benefitted from the contractual agreement.

Similarly, as it relates to Plaintiffs' argument that the benefit conferred upon Defendants was the retention of management fees, Plaintiffs have offered no factual allegations that the receipt of management fees upon closing was "excessive, unreasonable, or unconscionable." Hayes v. Am. Int'l Grp., No. 09-2874, 2014 WL 3746813, at *13 (E.D. Pa. July 29, 2014). Indeed, "[a] necessary element of unjust enrichment is that a benefit must have been conferred for which no compensation was given. In other words, the enrichment to the owners must be unjust." Myers Plumbing and Heating Supply Co. v. West End Fed. Savings and Loan Ass'n, 498 A.2d 966, 969 (Pa. Super. Ct. 1985) (citation omitted). Here, the complaint lacks factual allegations that Defendants' compensation in management fees for the services rendered by Defendants in facilitating the merger agreement was unjust or inequitable. Accordingly, the Court must grant Defendants' motion to dismiss Count II of Plaintiffs' complaint for failure to state a claim for unjust enrichment.

**IV.   CONCLUSION**

Based upon the foregoing, the Court will grant Defendants' motion to dismiss Plaintiffs' complaint without prejudice. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) (permitting a district court to dismiss a complaint upon granting a

Rule 12(b)(6) motion to dismiss "in ordinary civil litigation" where a plaintiff has not requested leave to amend).

An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
